**Geraldine LEAK, Plaintiff,**

v.

**UNITED TECHNOLOGIES CORP., Defendant.**

**No. 3:98CV740(WWE).**

United States District Court, D. Connecticut.

Dec. 21, 1999.

John R. Williams, Williams & Pattis, New Haven, CT, for Plaintiff.

Albert Zakarian, Robert J. O'Hara, Day, Berry & Howard, Hartford, CT, for Defendant.

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

EGINTON, Senior District Judge.

In her one-count complaint, plaintiff claims that the defendant discriminated against her on the basis of race in violation of Title VII and the Connecticut General Statutes Section 45a–60 and Section 46a–58.

Defendant denies plaintiff's allegations and moves for summary judgment. For the following reasons, defendant's motion for summary judgment will be granted.

### Background

The parties have submitted Statements of Facts pursuant to Local Rule 9(c), affidavits, and exhibits, which reveal the following factual background. Plaintiff Geraldine Leak is an African–American woman who was employed by defendant Pratt & Whitney Aircraft Division at the North Haven facility from 1978 until 1995. During her seventeen years of employment, Leak held various positions at Pratt & Whitney and was an active participant in the International Association of Machinists ("IAM").

From 1986 to June, 1991, Leak was employed as a Statistical Quality Control Inspector ("Control Inspector"). She performed her duties in both the blade and vane departments, although she worked mostly in the blade department.

Two other Control Inspectors, Joyce Gillespie and Sue Pellerin, who are white Caucasian women, also worked in Pratt & Whitney's North Haven facility in 1990 and 1991.

In 1991, Pratt & Whitney engaged in negotiations with IAM, which represented hourly employees at Pratt & Whitney facilities in Connecticut. As a result of these negotiations, Pratt & Whitney implemented a program known as Job Design in 1990 and 1991. Under Job Design, Pratt & Whitney and IAM jointly evaluated and combined positions in Pratt & Whitney facilities.

From January to April, 1991, Gillespie was on short-term disability due to an injury related to carpal tunnel syndrome. When Gillespie returned to work in April, Pratt & Whitney provided her with light

duty assignments such as filing and data entry.

In June, 1991, as part of the Job Design program, the position of Control Inspector and another known as Bench Inspector were merged into a newly-created position called Quality Assurance Inspector("Assurance Inspector"). Each control Inspector and Bench Inspector was given a choice to remain in the same position or accept the Assurance Inspector position. Leak, Gillespie, and Pellerin all accepted Assurance Inspector positions, which paid more than their previous Control Inspector positions.

Leak then filed grievances with the union claiming, *inter alia,* that the Job Design program "aided supervision in inspection in their on going system of favoritism and discrimination by forcing" her to become an Assurance Inspector, eliminating her previous position, and giving her Control Inspector duties to a Caucasian, Gillespie. She also claimed that Gillespie received more money in the same position. At the union grievance meeting, the union did not support the grievance.

In October, 1991, after she had been assigned to the vane department, Leak filed grievances with the union claiming that she was being discriminated against because of her loss of overtime opportunity in the blade department. In response, Pratt & Whitney reassigned Leak to the blade department.

In January, 1993, Gillespie and Pellerin were terminated in a reduction in force. Leak was not affected by the reduction in force and continued to work in the blade department until her voluntary retirement in 1995.

### Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when reason-able minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505.

Leak alleges disparate treatment based on race. She asserts that her transfer to the Assurance Inspector job pursuant to the Job Design program deprived her of overtime opportunities, that the new position was less prestigious than her previous position, that her new duties entailed dirtier work than her previous position, and that her assignment to the vane department required her to work in a colder location of the North Haven plant. She also claims that Gillespie, a Caucasian, was placed in her former Control Inspector position. Plaintiff further alleges that Pratt & Whitney's decision to implement the Job Design program was motivated by racially discriminatory animus, and that Pratt & Whitney followed a pattern and practice of placing Caucasian workers in more desirable positions.

Plaintiff's federal and state law discrimination claims will be reviewed together

since the relevant federal precedent is applicable to Connecticut's anti-discrimination law. *See Levy v. Commission on Human Rights and Opportunities*, 236 Conn. 96, 103, 671 A.2d 349 (1996).

■ When a plaintiff bringing a disparate treatment case is unable to establish the employer's reasons motivating the employment decision, the court must analyze the claim according to the burden shifting process established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668(1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). To establish a prima facie claim, the plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Although the plaintiff's initial burden is not onerous, she must show that the adverse employment action was not based upon legitimate reasons. *Thomas v. St. Francis Hospital and Medical Center*, 990 F.Supp. 81, 86 (D.Conn.1998).

■ If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ Adverse employment actions are not confined to instances of pecuniary emoluments, since a diminution of duties or a transfer to a position with less opportunity for advancement may also constitute an adverse employment action. *Rodriguez v. Board of Education*, 620 F.2d 362, 366 (2d Cir.1980); *de la Cruz v. New York City Human Resources Admin. Dept. of Social Services*, 82 F.3d 16, 21 (2d Cir.1996).

■ In this instance, plaintiff's transfer, which resulted in promotion to a higher labor grade level, does not constitute an adverse employment action raising the inference of discrimination.

Plaintiff was assigned to work in the vane department, and was dissatisfied with her overtime opportunities. However, six weeks later, Pratt & Whitney remedied plaintiff's grievance concerning the vane department by reassigning her to the blade department, where she had formerly worked and where she had satisfactory overtime opportunities. Furthermore, while many of her co-workers were eventually laid off from their positions, plaintiff was not involuntarily terminated. Accordingly, plaintiff cannot demonstrate that her duties were diminished or that she lacked advancement opportunities that she had enjoyed in her previous position.

Plaintiff claims that she was actually "demoted" despite her pay raise because her co-workers were promoted to her labor grade level. As plaintiff's brief explains, the implementation of the Job Design program effectively equalized the status of Control Inspectors and Bench Inspectors. The Court is not persuaded that such circumstances constitute an adverse employment action.

Furthermore, plaintiff has adduced no evidence either that Pratt & Whitney discriminated against her by placing Gillespie in her former position or that the decision to implement the Job Design program was motivated by discriminatory animus. Similarly, plaintiff has not demonstrated that Pratt & Whitney had a pattern and practice of discriminating against African–American employees.

Plaintiff averred in her depositions that African–American women were never given the desirable positions such as working in the North Haven facility's air-conditioned room. However, later she admitted that she knew of at least two African–American women who worked in the air-conditioned room.

Plaintiff offers no support to her assertions that Pratt & Whitney sent Caucasians to certain plants to prevent them from being laid off or that "whites were promoted to higher labor grades because of discriminatory tests that blacks were not allowed to take." Plaintiff cannot defeat a motion for summary judgment with conclusory allegations of discrimination absent any concrete particulars. *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.1985), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

■ Plaintiff claims that her supervisor made a racially derogatory comment about her. However, as plaintiff admitted, she never heard the comment, which was reported to her by another person. Plaintiff cannot raise genuine issues of material facts with hearsay statements. *See Schiess–Froriep Corp. v. S.S. Finnsailor,* 574 F.2d 123, 126 (2d Cir.1978) (On a motion for summary judgment, the Court may only consider evidence that would be admissible at trial).

Accordingly, Leak has not established a prima facie case to raise the inference of employment discrimination.

*Conclusion*

For the foregoing reasons, defendant's Motion for Summary Judgment [Doc. No. # 16] is GRANTED. The Clerk is directed to enter judgment in favor of the defendant and to close this case.

SO ORDERED.