259 F.3d 91 (2nd Cir. 2001)
 NELSON A. FARIAS AND ANGELA M. ROBINSON, PLAINTIFFS-APPELLANTS-CROSS-APPELLEES,
v.
INSTRUCTIONAL SYSTEMS, INC., DEFENDANT-APPELLEE-CROSS-APPELLANT,
PRENTICE-HALL, INC., DEFENDANT.
 Docket No. 00-9045(L), 00-9135(XAP)
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: April 24, 2001
Decided: Aug. 1, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Louie Nikolaidis, Lewis, Greenwald, Clifton & Nikolaidis, P.C., New York, Ny, for Plaintiffs-Appellants-Cross-Appelles.
 John A. Ridley, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for Defendant-Appellee-Cross-Appelant.
 Before: Jacobs, Parker, Katzmann, Circuit Judges.
 
 Dennis Jacobs, Circuit Judge
 
 1
 In this discrimination suit by Nelson A. Farias and Angela M. Robinson against their former employer, defendant Instructional Systems, Inc. ("ISI"), the United States District Court for the Southern District of New York (Wood, J.) granted summary judgment dismissing the claims of discrimination based on national origin and race but preserved Robinson's retaliation claim for trial, at which Robinson prevailed. Farias and Robinson appeal the dismissal of their discrimination claims; Robinson appeals from orders entered by the trial judge (Motley, J.) (i) refusing to submit the punitive damages claim to the jury and (ii) reducing Robinson's request for attorney's fees to reflect limited success. ISI cross-appeals (i) the denial of summary judgment dismissing Robinson's retaliation claim, (ii) the denial of ISI's request for a two-day continuance to accommodate the schedule of a witness named Marie Milillo, and (iii) the grant of plaintiffs' oral application at trial to exclude the testimony of ISI's counsel, Joseph Dunn, Esq.
 
 
 2
 We affirm the judgment in favor of ISI on the discrimination claims as well as the district court's trial rulings excluding Dunn's testimony and denying the continuance. The denial of summary judgment on Robinson's retaliation claim is not appealable per se, and the issues raised on summary judgment were not preserved by timely motions at trial. We also affirm the ruling that the record does not justify submission of punitive damages to the jury, and hold that the standard for imposition of punitive damages under federal law, set forth in Kolstad v. American Dental Association, 527 U.S. 526, 529-30 (1999), applies as well to the New York City Administrative Code. Finally, we vacate the award of attorney's fees and remand to the district court for clarification.
 
 BACKGROUND
 
 3
 Farias (who is Chilean-American) and Robinson (who is African-American) sued their employer, ISI, in the Southern District of New York, alleging employment discrimination based on national origin and race, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a)(1) and (2); Section 296 of the New York State Human Rights Law ("HRL"); and Section 8-107(a) of the New York City Administrative Code ("Administrative Code"). Robinson also alleged that ISI retaliated against her in violation of federal, state and local law because she filed an EEOC discrimination complaint.
 
 
 4
 ISI, a New Jersey corporation that marketed educational software, employed the plaintiffs as Educational Training Consultants ("ETC"). Plaintiffs' primary assignment was to service the firm's account with the New York City Human Resources Administration ("HRA"), assisting in the support and training of HRA personnel. HRA's contract with ISI was not renewed in 1994. For a time, ISI maintained staffing on the account in the hope that HRA would renew, but late in 1995 ISI began to lay off the employees servicing the HRA account.
 
 
 5
 Farias was terminated on October 28, 1994. Every ETC whose primary assignment was the HRA account was terminated by the end of 1994, except for plaintiff Robinson, who was placed on the Help Desk after returning from medical leave in December 1994.[1] Robinson was terminated by ISI's President, Phyllis Kaminer, on March 1, 1995. Kaminer explained that, without the HRA contract, ISI would have no work for Robinson unless it won the contract with a juvenile justice program in New Jersey. Kaminer held out the possibility of per diem work in other cities (Buffalo and Boston), and said that if the New Jersey contract was signed, ISI would consider rehiring Robinson for it. Robinson declined these alternatives because of the relocation or travel involved.
 
 
 6
 At that meeting, Robinson was given to understand that she would receive ISI's standard termination letter which offered severance benefits, conditional on the employee's release of all claims against ISI.[2](There are undoubtedly other terms and conditions of the standard termination letter, which is omitted from the Joint Appendix submitted to this Court.) This meeting, also attended by Marie Milillo, Director of Training, and David Lilly, Staff Development Manager, was amicable.
 
 
 7
 After the initial meeting, however, Kaminer learned that Robinson had filed an EEOC complaint alleging discrimination in the terms and conditions of her employment. At a second meeting on March 1, 1995 (roughly an hour after the first meeting), attended by the same people, Kaminer asked Robinson about the EEOC charge and told her that ISI could not offer her severance because Robinson's EEOC charge conflicted with at least one condition of the standard termination agreement. On the advice of ISI's counsel, Joseph Dunn, Kaminer explained that, because Robinson was unable to give the required consideration (a release of all claims against ISI), ISI would be unable to offer her severance.
 
 
 8
 Farias and Robinson alleged that they were terminated by reason of (respectively) national origin and race. In addition, plaintiffs alleged that ISI discriminated against them in the terms and conditions of their employment. Farias alleged that he was (1) paid a lower salary than non-Chilean-American employees with comparable backgrounds, (2) denied access to ISI computer equipment and denied financing for a personal computer, and (3) denied training opportunities available to other employees. And Robinson alleged that she (1) was denied a raise and (2) received a functional demotion when ISI placed her on the Help Desk in December of 1994. Finally, Robinson argued that ISI retaliated against her for filing an EEOC charge by denying her severance benefits, per diem work and the opportunity to be rehired by ISI when permanent work became available.
 
 
 9
 In support of its motion for summary judgment, ISI proffered nondiscriminatory reasons for the allegedly discriminatory actions, chiefly a serious downturn in its business. With respect to plaintiffs' allegations of discrimination in the terms and conditions of employment, ISI responded with respect to Farias that (1) his salary was commensurate with similarly situated employees not of Chilean heritage, (2) he was denied a personal computer because his job description did not call for one and because the accounts he was working on were about to be lost, and (3) he was unqualified for the positions for which he sought training and (in any event) similarly situated ETCs were not given the training that he was denied. With respect to Robinson's allegations, ISI responded that (1) she was denied a raise in order to bring her salary in line with lower salaries paid to similarly situated employees, and (2) the alleged functional demotion was an effort to keep her employed in anticipation of a new contract, since the alternative was to terminate her employment entirely.
 
 
 10
 The district court (Wood, J.) granted summary judgment in favor of ISI on the claims that ISI discriminated against the plaintiffs in the terms and conditions of their employment and in their terminations.
 
 
 11
 Robinson's retaliation claim--that ISI withheld benefits and opportunities because ISI learned (after terminating her but before assembling her severance package) that she had filed a charge with the EEOC--went to a jury before Judge Motley. On December 30, 1999, Judge Motley postponed the scheduled start of trial one day to January 4, 2000. By letter dated January 3, 2000, ISI requested a two-day continuance on the ground that one of its witnesses, Marie Milillo, was committed to attend a conference in California on January 5-6, and therefore was available to testify only on January 3, 4, or 7. This request was denied. At trial, plaintiffs made an oral motion to exclude the testimony of Mr. Dunn (the ISI lawyer who advised ISI's president on how to handle Robinson's severance package). Judge Motley granted the motion on the ground that Dunn's testimony related to a defense, advice of counsel, that is unavailable under Title VII.
 
 
 12
 At the close of the evidence, the defense moved for judgment as a matter of law under Fed. R. Civ. P. 50(a) on the grounds that (i) because Robinson was terminated before ISI knew of her EEOC complaint, the termination itself could not be retaliatory, and (ii) as to the only remaining issue, severance, the company's decision to withhold its usual offer of severance was justified by a legitimate non-retaliatory reason: Robinson's inability to give the required consideration in the form of a release. As to ISI's alleged offers of per diem work or later rehiring, ISI argued that it had no contractual obligation to offer these opportunities and, in any event, Robinson rejected them at the first March 1, 1995 meeting. The defense's Rule 50(a) motion was denied.
 
 
 13
 The jury found that Robinson was the victim of retaliation, and awarded $1,500 for the lost severance pay, $1,500 for the denial of two additional weeks of work, $14,000 on account of the lost opportunities for per diem work and for rehiring, and $6,000 for mental anguish. See Robinson v. Instructional Sys., Inc., 80 F. Supp. 2d 203, 207-08 (S.D.N.Y. 2000) ("Robinson I"). In a post-trial order dated January 25, 2000, the district court (i) awarded pre-judgment interest, bringing the total award to $30,607.47, see id. at 207; (ii) denied Robinson's request for punitive damages, see id. at 209-10; and (iii) ruled that Robinson was eligible to recover attorney's fees, see id. at 210-11. An Amended Judgment in favor of Robinson in the amount of $30,607.47 was filed on February 14, 2000.
 
 
 14
 Robinson's counsel sought $131,393.41 in attorney's fees and paralegal fees, plus $3,406.59 in costs. In an order dated July 18, 2000, Judge Motley awarded Robinson's counsel the sum of $37,194.97, an amount arrived at by reducing the number of hours that could reasonably be calculated towards the lodestar amount and by downwardly adjusting the lodestar to reflect Robinson's limited success in the litigation, viewed as a whole. See Robinson v. Instructional Systems, Inc., 105 F. Supp. 2d 283, 284-88 (S.D.N.Y. 2000) ("Robinson II").
 
 
 15
 ISI failed to renew its motion for judgment as a matter of law within ten days after entry of judgment, as required by Fed. R. Civ. P. 50(b). Presumably for that reason, its appeal on those issues is taken from the district court's denial of its motion for summary judgment.
 
 DISCUSSION
 A. Summary Judgment
 
 16
 This Court reviews de novo the district court's ruling on summary judgment, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor. See Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764-65 (2d Cir. 1998). "A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no issue warrant judgment for the moving party as a matter of law." Id. at 765 (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). Plaintiffs' claims of discrimination under the Human Rights Laws of New York City and New York State are evaluated using the same analytic framework used in Title VII actions. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000).
 
 1. Discrimination Claims
 
 17
 We affirm the grant of summary judgment in favor of ISI with respect to plaintiffs' discrimination claims for substantially the reasons stated in Judge Wood's March 19, 1999 Order. Plaintiffs failed to demonstrate that any genuine issue of material fact existed with respect to their discrimination claims and, based on the evidence in the record, ISI was entitled to judgment as a matter of law. See McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). Under the burden-shifting rules set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973), a plaintiff has the initial burden of making out a prima facie case of discrimination. See id. at 802. This may be accomplished by showing (1) membership in a protected class; (2) satisfactory job performance; (3) termination from employment or other adverse employment action; and (4) the ultimate filling of the position with an individual who is not a member of the protected class. See Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995). Alternatively, the fourth prong of the prima facie case may be satisfied if the plaintiff can demonstrate that the discharge or adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of plaintiff's membership in that class. See McLee, 109 F.3d at 135; see also James v. New York Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000) (noting de minimis prima facie case is made out by showing membership in a protected class, qualification for the position, an adverse employment action and "preference for a person not of the protected class" (internal quotation marks and citation omitted)).
 
 
 18
 If a plaintiff establishes a prima facie case, a presumption of discrimination is created and the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action or termination. See McDonnell Douglas, 411 U.S. at 802-03; James, 233 F.3d at 154; Quaratino, 71 F.3d at 64. The defendant is not required to prove that the articulated reason actually motivated its actions. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981) ("The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."). "If the defendant fails to discharge the burden by presenting a nondiscriminatory reason, the plaintiff will prevail (assuming the other aspects of the prima facie case are not contested)." James, 233 F.3d at 154.
 
 
 19
 If the defendant bears its burden of production, the presumption drops out of the analysis, see id., and the defendant "will be entitled to summary judgment... unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination", id. Evidence that the defendant's articulated nondiscriminatory reason is false, when added to the prima facie case, may or may not be "sufficient to support a reasonable inference that prohibited discrimination occurred" and warrant submitting the case to the jury. Id. at 156; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").
 
 
 20
 As Judge Wood concluded, even if plaintiffs presented a prima facie case, ISI presented legitimate, non-discriminatory grounds to defeat the presumption of discrimination. Plaintiffs failed to produce any evidence, other than conclusory statements unsupported by the record, to rebut the legitimate, nondiscriminatory reasons offered by ISI, let alone evidence that could reasonably support a verdict in their favor. See James, 233 F.3d at 157. We therefore affirm the order of summary judgment dismissing the discrimination claims.
 
 2. Retaliation Claim
 
 21
 The district court's denial of ISI's motion for summary judgment on Robinson's retaliation claim is unappealable, and we therefore decline to address the merits of ISI's challenge to this ruling. "In the absence of a Rule 50(b) renewed motion or extraordinary circumstances, an appellate court [i]s without power to direct the District Court to enter judgment contrary to the one it had permitted to stand." Pahuta v. Massey-Ferguson, Inc., 170 F.3d 125, 129 (2d Cir. 1999) (alteration in the original) (internal quotation marks and citations omitted).
 
 
 22
 If ISI had unsuccessfully renewed its Rule 50(a) motion after trial, see Fed. R. Civ. P. 50(b), ISI could have appealed the denial of its motion for judgment as a matter of law. See Pahuta, 170 F.3d at 132. However, this Court "will not hear in the guise of an appeal of [the defendant]'s defeat on its motion for summary judgment an appeal of its defaulted motion under Rule 50(a)." Id. at 131. This principle assures that matters of law are presented to the district court on a full record before an appellant may assert error:
 
 
 23
 Inasmuch as a party is not permitted to appeal an issue that was not properly raised before the district court at trial in a motion for judgment as a matter of law, "it would be odd indeed for us to consider whether summary judgment was properly denied in a case where the identical issue was presented at trial and the requisite motions for judgment as a matter of law were not made."
 
 
 24
 Id. at 131 (quoting Watson v. Amedco Steel, Inc., 29 F.3d 274, 279 (7th Cir. 1994)). We see no extraordinary circumstance that would justify a deviation from the rule that "such an appeal will not ordinarily lie", id. at 130, and we refuse therefore to review the district court's denial of summary judgment.
 
 B. Denial of Continuance
 
 25
 On December 30, 1999, the district court rescheduled the start of trial from January 3 to January 4, 2000. On the first day of trial, ISI requested a continuance so that Marie Milillo, who was unavailable to testify on January 5 and 6, could be permitted to testify. In denying this request, the district court noted that the defendant had known of the original trial date since November 2, 1999. The district court also stated that it would seek to accommodate Ms. Milillo's testimony that day, January 4, or else allow her deposition to be read into evidence. Ms. Milillo did not testify on January 4, and the defendant declined to introduce her deposition.
 
 
 26
 The decision to deny a continuance rests within the sound discretion of the trial court and will be overturned only for an abuse of discretion. See Ungar v. Sarafite, 376 U.S. 575, 589 (1964) ("[I]t is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel."); United States v. Cusack, 229 F.3d 344, 349 (2d Cir. 2000) ("A district court has broad discretion to grant or deny a motion for a continuance." (citing United States v. Pascarella, 84 F.3d 61, 68 (2d Cir. 1996))). This Court will affirm orders denying continuances unless there is a showing both of arbitrariness and of prejudice to the defendant. See Sequa Corp. v. GBJ Corp., 156 F.3d 136, 147-48 (2d Cir. 1998) ("We are particularly solicitous of a district court's ruling on a motion to adjourn the scheduled start of a trial proceeding.").
 
 
 27
 The ruling here caused no prejudice. Ms. Milillo's testimony was useful to corroborate Kaminer's account of the March 1, 1995 meetings, but by the same token was cumulative.[3] And the court virtually invited the defendant to read the witness's deposition testimony into evidence. Nor was the ruling arbitrary in the slightest. The trial date had been set for a year, and a one-day slippage was announced by the court ahead of time. There is nothing arbitrary about refusing a three-day adjournment to accommodate this witness.
 
 C. Exclusion of Testimony
 
 28
 Judge Motley granted plaintiffs' application to exclude the testimony of ISI's counsel on the ground that the proposed testimony was offered to support a defense based on advice of counsel, and that there was no such defense to a discrimination claim. The exclusion of this testimony was not an abuse of discretion. See Zahra v. Town of Southold, 48 F.3d 674, 686 (2d Cir. 1995) ("A district court has wide discretion in controlling the admissibility of testimony and other evidence"). ISI's counsel represented that Joseph Dunn was prepared to testify that
 
 
 29
 the president [Phyllis Kaminer] called him and that he counseled her that she could not give severance because the company's practice was to give severance in exchange for a release. The president had just learned that in fact Ms. Robinson had filed a charge. It was his view that he didn't want to attempt to coerce a release out of her, so he said no, in this instance don't offer the severance, and she acted on that good-faith advice of counsel.
 
 
 30
 ISI contends that Dunn's testimony had bearing on the legitimate non-retaliatory reason given for the denial of severance benefits, and would have helped establish that Kaminer was acting without a retaliatory motive when she informed Robinson that she was ineligible for the standard severance package.
 
 
 31
 In this case, advice of counsel affords no defense, as the district court found. Counsel's advice was that Kaminer should not offer Robinson the severance package offered to everyone else because Robinson had filed an EEOC complaint. But nothing would prevent ISI from offering the severance in exchange for a release, which no doubt included actual claims as well as hypothetical ones. Dunn's testimony therefore would only have reinforced the jury's finding that the denial of severance benefits was retaliatory, and his testimony therefore could not evidence a motive that was both legitimate and non-retaliatory. The retaliatory finding rests on cause and effect, regardless of whether Kaminer acted out of animus and revenge or on the advice of counsel. We need not decide whether there are circumstances where the advice of counsel could constitute or assist a defense to a claim of retaliation. The district court did not abuse its discretion in excluding this testimony.
 
 
 32
 The admissibility of Dunn's testimony insofar as it may bear on punitive damages is a different question. To the extent that Dunn's testimony would have had bearing on punitive damages, any error in excluding it is harmless. The testimony was cumulative of Kaminer's account of what she was told by Dunn prior to denying Robinson severance and we affirm infra the district court's ruling that the existing record did not support submission of punitive damages to the jury.
 
 D. Punitive Damages
 
 33
 We review de novo the district court's refusal to put the issue of punitive damages to the jury. See Schonfeld v. Hilliard, 218 F.3d 164, 172 (2d Cir. 2000). It is undisputed that the New York State Human Rights Law does not provide for punitive damages. See Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 235 (2d Cir. 2000) (citing Thoreson v. Penthouse Int'l, Ltd., 591 N.Y.S.2d 978, 979 (1992)). However, punitive damages in discrimination cases are available under both federal law, see 42 U.S.C. § 1981a(b)(1), and the local Administrative Code, see N.Y. City Admin. Code § 8-502(a).
 
 
 34
 The Supreme Court has recently clarified the federal standard for imposing punitive damages: "Punitive damages [under Title VII] are limited... to cases in which the employer has engaged in intentional discrimination and has done so `with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" Kolstad v. American Dental Ass'n, 527 U.S. 526, 529-30 (1999) (quoting 42 U.S.C. § 1981a(b)(1)). Malice and reckless indifference refer to "the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." Id. at 535; see also Weissman, 214 F.3d at 235. A "positive element of conscious wrongdoing" is required for an award of punitive damages. Kolstad, 527 U.S. at 538 (quoting C. McCormick, Law of Damages 280 (1935)). As an alternative to proving that the defendant knew it was acting in violation of federal law, "[e]gregious or outrageous acts may serve as evidence supporting an inference of the requisite `evil motive.'" Id.
 
 
 35
 "[T]he Administrative Code does not provide a standard to use in assessing whether [punitive] damages are warranted." Weissman, 214 F.3d at 235. As previously noted, discrimination claims brought under the Administrative Code are generally analyzed within the same framework as Title VII claims. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000). Here, the district court concluded that punitive damages under both federal and local law should be assessed under the federal standard, see Robinson I, 80 F. Supp. 2d at 209, an issue undecided in this Circuit, see Weissman, 214 F.3d at 235 (declining to decide appropriate standard for imposing punitive damages on claims brought under Administrative Code because parties agreed that federal standard should apply and jury was charged under the federal standard without objection).
 
 
 36
 We agree with the district court that the federal standard applies to claims for punitive damages under the Administrative Code. New York law, which governs the imposition of punitive damages under the Administrative Code, applies in other contexts a standard for imposing punitive damages that is "virtually identical" to the standard under Title VII: "they [both] require, for an award of punitive damages, that a defendant not only intentionally discriminate but do so in the face of a perceived risk that these actions are prohibited by law." Greenbaum v. Handlesbanken, 67 F. Supp. 2d 228, 262 (S.D.N.Y. 1999) (Sotomayor, Cir. J., sitting by designation on the district court).
 
 
 37
 Robinson relies on a recent district court opinion, Thompson v. American Eagle Airlines, Inc., 2000 WL 1505972 (S.D.N.Y. Oct. 6, 2000), for the proposition that federal standards may not be applied unless the underlying state or local statute is coextensive with the federal statute, see id. at *11 (citing Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 154-56 (2d Cir. 1998)), and argues that the Administrative Code is more permissive with respect to punitive damages because there is no articulated standard in the statute or the caselaw. Thompson is inapposite. Thompson addresses the inapplicability of a federal framework for analyzing local claims when a standard set forth in the state or local statute is incompatible with the federal standard; it does not inform the analysis when the local statute is silent as to the applicable standard.[4] We adopt the reasoning of Greenbaum, and hold that the imposition of punitive damages under both federal and local law is governed by the federal standard. See Umansky v. Masterpiece Int'l Ltd., 715 N.Y.S.2d 638 (Mem) (2d Dep't 2000) (applying federal punitive damages standard to claim brought under the Administrative Code of the City of New York). We therefore assess the district court's denial of punitive damages on all of Robinson's claims of retaliation under Kolstad. As the district court ruled, Robinson presented no evidence that ISI retaliated against her with the conscious knowledge it was violating the law, nor did she present evidence of "egregious" or "outrageous" conduct from which an inference of malice or reckless indifference could be drawn. The evidence demonstrated that Robinson was denied severance benefits because terminated employees were required under company policy to release all claims against the company in exchange for a severance package, and Robinson already had a pending federal claim lodged against ISI. Kaminer consulted with ISI's attorney and determined that ISI could not offer Robinson the same severance package due to her pending claim. That conduct sustains the verdict in favor of Robinson on the retaliation claim, but whether or not the advice was appropriate, action taken pursuant to advice that the action is consistent with the law is insufficient to support an award of punitive damages under the standard articulated in Kolstad.
 
 
 38
 Based on the evidence presented by Robinson, the district court properly refused to charge the jury on this issue.
 
 E. Attorney's Fees
 
 39
 "In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party, other than the [EEOC] or the United States, a reasonable attorney's fee...." 42 U.S.C. 2000e-5(k). Pursuant to that fee shifting provision, Robinson's counsel applied for $132,193.75 in attorney's fees and paralegal fees, plus $3,406.59 in costs. The district court awarded $37,194.97. To arrive at that amount, the court (i) cited several grounds for reducing the number of hours reasonably expended in the litigation for purposes of calculating the lodestar, and (ii) adjusted the lodestar further downward to reflect Robinson's limited success. See Robinson II, 105 F. Supp. 2d at 288.
 
 
 40
 "Because Title VII entrusts the awarding of attorney's fees to the discretion of the district court, we will not disturb the court's calculation of reasonable fees absent an abuse of that discretion or an error of law." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).
 
 
 41
 As best we can tell, the fee calculation in this case may have double discounted for work performed on unsuccessful claims. Because we do not know whether the district court improperly reduced the award more than once based on Robinson's limited success, we vacate the award of attorney's fees and remand to the district court for clarification as to the reasoning behind the reductions in the number of reasonable hours and the overall lodestar figure. Nothing in the remand order prevents the court from reconsidering the calculation in any respect. The purpose of the remand is to establish with sufficient specificity what the district court intended to do so that our consideration of that ruling can result in a holding limited to the facts of this case. Because we are thoroughly familiar with the facts surrounding the fee award, we direct that any future appeal be directed to the same panel for review.
 
 CONCLUSION
 
 42
 For the foregoing reasons, the district court's partial grant of summary judgment is undisturbed, and we affirm the district court's rulings (i) denying ISI a continuance; (ii) excluding the testimony of Joseph Dunn; and (iii) declining to put punitive damages to the jury on Robinson's retaliation claim. The award of attorney's fees in the amount of $37,194.97 is vacated. We remand the issue of attorney's fees to the district court for clarification as to the basis for its reductions, and we direct the Clerk of Court to return any future appeal of that award to this panel.
 
 
 
 NOTES:
 
 
 [1]
 ISI claimed that it initially placed Robinson at the Help Desk after the HRA contract expired because it hoped to obtain a contract with a juvenile justice program in New Jersey and assign Robinson to it, in view of her prior experience in that area. Robinson alleged that the assignment to the Help Desk was a functional demotion by reason of race.
 
 
 [2]
 According to ISI's February 1992 Employee Manual (presumably included by the parties in the Joint Appendix submitted to this Court because its terms governed at the time of Robinson's termination in 1994), "[w]hen management initiates a termination of employment, a separation allowance of two weeks' salary for each year of service, up to a maximum of six months' salary, may be payable to the discharged employee.... Receipt of a separation allowance is not an automatic entitlement, and at ISI's discretion, will not be paid in situations of gross misconduct or employee-induced separation."
 
 
 [3]
 Although Phyllis Kaminer died prior to the start of trial, the district court permitted her deposition testimony to be read into the record.
 
 
 [4]
 The other cases relied upon by Robinson to demonstrate that punitive damages are more readily available under the Administrative Code, see Grullon v. South Bronx Overall Econ. Dev. Corp., 712 N.Y.S.2d 911 (N.Y. Civ. Ct. 2000), and Walsh v. Covenant House, 664 N.Y.S.2d 282 (1st Dep't 1997), do not stand for the propositions for which Robinson cites them.