15-1777
Chauca v. Abraham

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2016

(Argued: September 9, 2016      Decided: November 1, 2016
                                Amended: November 8, 2016)

Docket No. 15-1720(L), 15-1777(XAP)[*]

_____

VERONIKA CHAUCA,

*Plaintiff-Appellant,*

JAMIL ABRAHAM, individually, PARK MANAGEMENT SYSTEMS, LLC, a.k.a. Park
Health Center, ANN MARIE GARRIQUES, individually

*Defendants-Appellees.*
_____

B e f o r e:

KATZMANN, *Chief Judge*, SACK and HALL, *Circuit Judges.*

_____

Appeal from a decision of the district court denying plaintiff's request for a
jury instruction concerning punitive damages for pregnancy discrimination

_____

[*] 15-1720 was closed by an order filed on 10/6/15.

claims arising under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107(1)(a). Because the City's Human Rights Law does not expressly provide a standard for awarding punitive damages, the United States District Court for the Eastern District of New York (Vitaliano, *J.*) drew on the corresponding federal Title VII standard. On this basis, the court declined to provide a punitive damages instruction to the jury. Plaintiff contends the court erred in applying the federal standard because the City's Human Rights Law must be construed liberally and independently of federal law. There is no controlling state law precedent establishing the appropriate standard, however, and because establishing that standard is an important issue of state law and would resolve this case, we believe the New York Court of Appeals should have the opportunity to address this question in the first instance. Accordingly, we CERTIFY the question to the New York Court of Appeals.

———————————

STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, Chester, NY (Anne Donnelly Bush, Law Offices of Anne Donnelly Bush, Hastings-on-Hudson, NY, *on the brief*), *for Plaintiff-Appellant*.

ARTHUR H. FORMAN, Forest Hills, NY, *for Defendants-Appellees*.

Joshua Friedman, Friedman & Houlding, LLP, Mamaroneck, NY, *for Amicus Curiae* National Employment Lawyers Association/New York.

———————————

KATZMANN, *Chief Judge*:

What is the meaning of the phrase "shall be construed liberally"? Just as the recipe instruction to "apply liberally" has bedeviled many an amateur chef, the New York City Council's directive that courts shall construe the City's

Human Rights Law ("NYCHRL") liberally presents its own interpretive challenge. We confront a seemingly straightforward but surprisingly vexing question: what is the standard for a punitive damages award for unlawful discriminatory acts in violation of the NYCHRL? Is it the same as the standard for awarding punitive damages under Title VII? If not, what standard should courts apply? As we explain, we think this question would be more appropriately answered by the New York Court of Appeals.

In 2005 the City Council, concerned that the NYCHRL had been interpreted too narrowly by courts in the past—often by drawing on corresponding federal standards—amended the New York City Administrative Code to ensure that "[t]he provisions of [the NYCHRL] shall be construed liberally . . . regardless of whether [related] federal or New York State civil and human rights laws . . . have been so construed." Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 of 2005 (Oct. 3, 2005) § 7, N.Y.C. Admin. Code § 8-130 ("Restoration Act"). We have since recognized that "courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102,

3

109 (2d Cir. 2013). This task is not always uncomplicated, however. The Restoration Act identifies a handful of code provisions that had been interpreted too narrowly by courts, but it otherwise provides no specific guidance concerning *how* the NYCHRL should be "construed liberally" and independently of state and federal law in its particular applications.

This brings us to the case at hand, which involves a dispute over the standard for establishing liability for punitive damages under the NYCHRL. Plaintiff-Appellant Veronika Chauca prevailed in a jury trial against Defendants-Appellees Dr. Jamil Abraham, Ann Marie Garriques, and Park Management Systems, LLC (a.k.a. Park Health Center) on her claim of pregnancy discrimination in violation of federal, state, and city law. Before the case was submitted to the jury, however, the district court denied Chauca's request to provide a jury instruction on punitive damages under the NYCHRL. The court declined to do so because it found that Chauca had put forward no evidence that her employer intentionally discriminated against her with malice or reckless indifference for her protected rights — the standard for an award of punitive damages under the corresponding pregnancy discrimination provisions of

4

federal law contained in Title VII. Chauca appeals that decision, arguing that the district court failed to construe the NYCHRL's standard for punitive damages liability "liberally" and to analyze it "independently" of federal law. The question before this Court, then, is whether the standard for punitive damages is the same under both Title VII and the NYCHRL, or if a "liberally" construed NYCHRL might set forth a broader standard for liability. Because we conclude that the Restoration Act, the relevant sections of the NYCHRL, and New York case law do not resolve this question, as we noted above, we CERTIFY the question to the New York Court of Appeals. *See* N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27 (2013).

BACKGROUND

## I.  Factual and Procedural History

Plaintiff-Appellant Veronika Chauca began working for Park Management Systems (the "Center") in 2006 as a physical therapy aid. In July 2009, she informed her supervisors, Defendants-Appellees Dr. Jamil Abraham and Office Supervisor Ann Marie Garriques, that she was pregnant and would be taking maternity leave with a scheduled return in late November, which they approved.

5

During her time away, another aide, Debra Mahearwanlal, handled Chauca's duties. Shortly before Chauca was scheduled to return to work, she contacted the office to remind them of her return. She claims she got the runaround: Sheila Ramasre, the Center's payroll manager, told her she needed to discuss the details of her return with Abraham; Abraham stated that she actually needed to speak to Garriques; and Garriques was on vacation. When Chauca ultimately did reach Garriques, Garriques told her that "we no longer need your services" and then hung up the phone. *See* Joint App. at 82. Chauca attempted to contact the Center to learn why she would not be allowed to return, but whenever she called, the Center either would not answer or would place her on hold indefinitely. Later, both Abraham and Garriques claimed that Chauca was not brought back because of a slowdown of business and changes following healthcare reform. At trial, Garriques testified that she had told Chauca at the time that "[they] have started reducing the hours of the staff and possibl[y] will be laying off some of the staff" and that "if there's any changes, [they] will give her a call." Joint App. at 286. Plaintiff suspected this explanation was pretextual, because no other employees had been laid off, and Mahearwanlal only briefly worked on a reduced schedule,

6

returning to a 40-hour workweek within a month. Chauca also alleged that at least three other pregnant women had been unlawfully terminated after becoming pregnant or after going on maternity leave.

In response, in December 2009 Chauca filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging pregnancy discrimination. Even as business picked back up and Chauca continued to contact the Center about returning to work in January and February of 2010, Abraham explained that Chauca was not invited back to work because by that point "she decide[d] to sue me," referring to her EEOC charge of unlawful discrimination. *See* Joint App. at 221. After receiving a notice of right to sue from the EEOC, Chauca subsequently filed suit in November 2010 in the Eastern District of New York against the Center and against Abraham and Garriques individually, alleging, *inter alia*, sex and pregnancy discrimination in violation of the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e(k), 2000e-2(a), which is part of Title VII of the Civil Rights Act of 1964, as well as in violation of her rights as guaranteed by both the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(1)(a), and the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).

Among the relief Chauca sought was compensatory and punitive damages, the latter of which is the focus of the present dispute.

At summary judgment, the district court concluded that Chauca had established a prima facie case of pregnancy discrimination and denied defendants' motion for summary judgment on all claims with respect to the Center and on Chauca's state and city law claims with respect to Abraham and Garriques.[1] The case then went to trial and, during the charging conference, the district court declined to provide a punitive damages instruction to the jury over plaintiff's objection. While recognizing that the NYCHRL calls for a liberal construction of its provisions, the district court found that Chauca had put forward no evidence that the employer had intentionally discriminated with "malice" or with "reckless indifference" to her protected rights, impliedly applying the standard under Title VII. The jury returned a verdict in Chauca's favor, awarding $10,500 in lost compensation and $50,000 for pain and suffering. Chauca now appeals the denial of a jury instruction on punitive damages.

---

[1] The district court granted summary judgment in favor of Abraham and Garriques on Chauca's Title VII claim, as individual defendants cannot be held personally liable under Title VII. *See Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004).

## DISCUSSION

### I.     Standard of Review

"We review challenges to a district court's jury instructions *de novo*. 'A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law.'" *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010) (citation omitted) (quoting *LNC Invs., Inc. v. First Fidelity Bank, N.A.*, 173 F.3d 454, 460 (2d Cir. 1999)).

### II. Punitive Damages under the NYCHRL

The question before us is what the standard is to be found liable for punitive damages for unlawful discriminatory acts in violation of the NYCHRL and whether it is the same as the standard for a punitive damages award under Title VII. As discussed below, we think the New York Court of Appeals is the appropriate court to answer this question.

We begin by briefly reviewing the relevant sections of the City's NYCHRL as codified in its Administrative Code. Under city law, it is an unlawful discriminatory practice for an employer or their employee to "refuse to hire" or

9

"to discharge from employment" any person because of her pregnancy.[2] *See* N.Y.C. Admin. Code § 8-107(1)(a)(2). The law establishes the availability of both compensatory and punitive damages awards against employers and employees found directly liable for discriminatory practices. *Id.* § 8-502(a). In addition to setting forth liability for an employer's *own* discriminatory practices, the law also "creates an interrelated set of provisions to govern an employer's liability for an *employee's* unlawful discriminatory conduct in the workplace." *Zakrzewska v. New Sch.*, 928 N.E.2d 1035, 1039 (N.Y. 2010) (emphasis added).

As to this imputed liability, employers can be held vicariously liable for the acts of their employees in the following circumstances: "(1) where the offending employee 'exercised managerial or supervisory responsibility' . . . ; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take 'immediate and appropriate

---

[2] Pregnancy discrimination is a form of gender discrimination under the NYCHRL. *See, e.g., Sanchez v. El Rancho Sports Bar Corp.*, No. 13-CV-5119 (RA), 2015 WL 3999161, at *6 & n.6 (S.D.N.Y. June 30, 2015) ("Although § 8-107(1) does not explicitly refer to pregnancy, the New York Court of Appeals has held that 'distinctions based solely upon a woman's pregnant condition constitute sexual discrimination.'" (quoting *Elaine W. v. Joint Diseases N. Gen. Hosp., Inc.*, 613 N.E.2d 523, 525 (N.Y. 1993))).

corrective action'; and (3) where the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent [it].'" *Id.* (quoting N.Y.C. Admin. Code § 8-107(13)(b)(1)–(3)). Implicitly recognizing that an employer cannot control all actions of its employees, the law also enables an employer liable for the conduct of an employee to mitigate punitive damages liability or avoid liability altogether in certain circumstances where the employer can prove it has put into place policies and procedures to educate employees, to prevent and detect unlawful discrimination, and to investigate and effectively resolve complaints of such conduct. *See* N.Y.C. Admin. Code § 8-107(13)(d)–(e).

Regardless of whether an employer can mitigate or avoid imputed liability for such damages, however, the NYCHRL does not articulate a standard for a finding of employer or employee liability for punitive damages in the first place, leaving courts to determine the appropriate standard.

### A.      *Farias* **and the Federal Punitive Damages Standard**

This is not the first time this Court has been asked to shed light on the question of a punitive damages standard under the NYCHRL. Indeed, in *Farias v.*

11

*Instructional Systems, Inc.*, 259 F.3d 91 (2d Cir. 2001), we observed that because

"discrimination claims brought under the Administrative Code are generally

analyzed within the same framework as Title VII claims," and as "'[t]he

Administrative Code does not provide a standard to use in assessing whether

[punitive] damages are warranted,'" the federal Title VII standard applies to

claims for punitive damages under the Administrative Code. *Id.* at 101 (quoting

*Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 235 (2d Cir. 2000)). Under the

Title VII standard, "[p]unitive damages are limited . . . to cases in which the

employer has engaged in intentional discrimination and has done so 'with malice

or with reckless indifference to the federally protected rights of an aggrieved

individual.'" *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 529–30 (1999) (quoting 42

U.S.C. § 1981a(b)(1)). As of 2001, then, the standard in the Second Circuit for

liability for punitive damages under the NYCHRL required a showing that the

defendant had engaged in intentional discrimination and had done so with

malice or with reckless indifference to the protected rights of the aggrieved

individual.

12

## B.     Restoration Act of 2005

This standard has subsequently been called into question, however. Believing that the general substitution of federal standards had led to the NYCHRL being "construed too narrowly to ensure protection of the civil rights of all persons covered by the law," Restoration Act § 1, the New York City Council has twice legislatively clarified the "uniquely broad and remedial purposes" of the NYCHRL. *See* N.Y.C. Admin. Code § 8-130(a). As part of the Restoration Act of 2005, the City Council instructed that "[t]he provisions of [the NYCHRL] shall be construed liberally . . . regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of [the NYCHRL], have been so construed." Restoration Act § 7 (codified at N.Y.C. Admin. Code § 8-130(a)). In light of this amendment, we have subsequently concluded that "courts must analyze NYCHRL claims separately and independently from any federal and state law claims." *Mihalik*, 715 F.3d at 109.

13

Chauca argues that as a result of the Restoration Act, *Farias* is no longer

good law.[3] The matter is not as straightforward as she suggests, however. To

begin, the legislative history of the Restoration Act makes clear that it sought to

override legislatively several judicial decisions that the Council thought had too

narrowly construed the NYCHRL or that had established a federal standard

more narrow than that intended under the NYCHRL. Indeed, it identified those

---

[3] As to Chauca's proposed post-*Farias* liberally construed standard for punitive damages liability under the NYCHRL, she leans heavily on the fact that Section 8-107(13)(d)–(e) enables employers to mitigate or avoid imputed punitive damages liability for the acts of their employees. She argues that the existence of these provisions indicates that punitive damages are presumptively available in *all* circumstances, regardless of whether the employer or employee has engaged in intentional discrimination and has done so with malice or reckless indifference to the individual's rights. *See* Pl.-Appellant's Reply Br. at 8 ("[T]he . . . structural aspect of [the mitigation and avoidance provisions] is that they presume that the factfinder is permitted to determine whether and to what extent punitive damages are to be imposed *whenever* discrimination has occurred."). However, we are skeptical that this inference, even if correct, would resolve our inquiry. This is because both employers and employees also may be found directly and individually liable for punitive damages under the NYCHRL. *See Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012). Thus, even if Chauca were correct that the mitigation and avoidance provisions establish the presumption that punitive damages are always available in cases of *imputed* liability, this would not answer the question of the punitive damages standard for liability based on an employer's own actions, an employee's individual liability for actions also imputed to the employer, or an employee's individual liability for actions not imputed to the employer.

14

decisions by name as ones the Restoration Act was intended to override. *See* The

Council Report of the Governmental Affairs Division, Committee on General

Welfare, on Prop. Int. No. 22-A at 4–6 (Aug. 17, 2005). This suggests that the

Council was well aware of the specific cases it thought had misconstrued its

human rights law, and importantly, *Farias* was not among the decisions

expressly identified by the Council.

The text of the Restoration Act also makes no mention of punitive

damages, and the only reference to punitive damages in the Act's legislative

history is found in the testimony of the Act's principal drafter, Craig Gurian,

who stated:

> Among other areas that will be able to be addressed anew in view of
> the statute (and by way of illustration only) are . . . [w]here a
> discriminator recklessly disregards the possibility that his conduct
> may cause harm, that discriminator ought to be subject to punitive
> damages—the current imported federal standard restricting these
> damages to circumstances where the reckless disregard is of the
> specific risk that the human rights law is being violated is unduly
> restrictive (it gives discriminators an incentive to plead ignorance of
> the law) and should be examined.

Testimony of Craig Gurian Regarding Intro 22A, the Local Civil Rights

Restoration Act, Committee on General Welfare at 4 (Apr. 14, 2005), *available at*

15

http://www.antibiaslaw.com/sites/default/files/all/CenterTestimony041405.pdf.

Whether the City Council agreed with Gurian that the federal standard is

"unduly restrictive" is unclear, and his suggestion that the standard "should be

examined" sheds little light on what the appropriate standard is.

Nor do more recent amendments to the NYCHRL provide definitive

guidance as to the standard. Earlier this year, the City Council amended the

NYCHRL once again to signal further to courts the need to conduct an

independent and liberal construction of the NYCHRL. In the legislative findings

and intent provision of Local Law 35 of 2016, the City Council explained:

> Following the passage of local law number 85 for the year 2005, known as the Local Civil Rights Restoration Act, some judicial decisions have correctly understood and analyzed the requirement of section 8-130 of the administrative code of the city of New York that all provisions of the New York city human rights law be liberally and independently construed. The purpose of this local law is to provide additional guidance for the development of an independent body of jurisprudence for the [NYCHRL] that is maximally protective of civil rights in all circumstances.

N.Y.C. Local Law No. 35 of 2016 (Mar. 28, 2016) (codified at N.Y.C. Admin. Code

§ 8-130) ("2016 Act"). Consistent with this statement of intent, Section 8-130 was

amended to read in part:

16

> a. The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws . . . worded comparably to provisions of this title . . . have been so construed. . . .
>
> . . . .
>
> c. Cases that have correctly understood and analyzed the liberal construction requirement of subdivision a of this section and that have developed legal doctrines accordingly that reflect the broad and remedial purposes of this title include *Albunio v. City of New York*, 16 N.Y.3d 472 (2011), *Bennett v. Health Management Systems, Inc.*, 92 A.D.3d 29 (1st Dep't 2011), and the majority opinion in *Williams v. New York City Housing Authority*, 61 A.D.3d 62 (1st Dep't 2009).

N.Y.C. Admin. Code § 8-130. Neither the 2016 Act nor its legislative history discusses punitive damages, and none of the cases cited approvingly in the Act concerns the availability of punitive damages. Given the lack of clarity concerning the appropriate standard for punitive damages and the importance of this issue to state and city law, we believe the prudent course of action is to certify this question to the New York Court of Appeals.

## III. Certification to the New York State Court of Appeals

"Although the parties did not request certification, we are empowered to seek certification *nostra sponte*." *Kuhne v. Cohen & Slamowitz, LLP*, 579 F.3d 189, 198 (2d Cir. 2009). In ordinary cases, "[w]here the substantive law of the forum

17

state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994). In particularly difficult cases, however, "we are not limited solely to making predictions, because New York law and Second Circuit Rule § 0.27 allow us to certify to New York's highest court 'determinative questions of New York law [that] are involved in a cause pending before [us] for which there is no controlling precedent of the Court of Appeals.'" *State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 505 (2d Cir. 2004) (quoting N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27). Certification does not terminate or transfer the case; "[i]t permits federal courts to ask the highest court of a state directly to resolve a question of state law and to do so while the federal suit is pending." *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 151 (2d Cir. 2001). "The certification process provides us with a 'valuable device for securing prompt and authoritative resolution' of questions of state law." *Briggs Ave. L.L.C. v. Ins. Corp. of Hannover*, 516 F.3d 42, 46 (2d Cir. 2008) (quoting *Ex rel. Kidney v. Kolmar Labs., Inc.*, 808 F.2d 955, 957 (2d Cir. 1987)). "We have deemed certification appropriate where state law is not clear and state

18

courts have had little opportunity to interpret it, where an unsettled question of state law raises important issues of public policy, [and] where the question is likely to recur . . . ." *Mallela*, 372 F.3d at 505 (citations omitted).

In determining whether to certify a question, then, "we consider: (1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007). As we discuss below, each of these considerations weighs in favor of certification to resolve the question of the punitive damages standard under the NYCHRL.

### A.    Absence of Authoritative State Court Decisions

As to the first factor, New York state court decisions do not provide definitive guidance on this question. As noted above, it remains unclear whether the Restoration Act was intended to legislatively override *Farias*, as there have been few state court decisions concerning the punitive damages standard since 2005. The only relevant post-2005 case cited by either party at oral argument was *Salemi v. Gloria's Tribeca, Inc.*, *see* Oral Argument at 11:01, and although the *Salemi* court affirmed a jury's award of $1.2 million in punitive damages by deeming it

19

not grossly excessive, the court made no mention of the standard used in charging the jury on punitive damages in the first place. *See* 982 N.Y.S.2d 458, 460 (1st Dep't 2014). Moreover, if the Restoration Act did legislatively override *Farias*, *cf. Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) ("[T]he Restoration Act notified courts that . . . cases that had failed to [recognize textual distinctions between the NYCHRL and its state and federal counterparts and to independently construe them] were being legislatively overruled." (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)), state court decisions have not subsequently provided an answer as to what the standard for a punitive damages award against employers under the NYCHRL is.[4] The absence of state court case law weighs in favor of certification.

---

[4] Only a handful of other state court decisions have raised the question of the punitive damages standard since 2005, and none considers the Restoration Act's possible effect on the NYCHRL's punitive damages standard. *See, e.g., Taylor v. New York Univ. Med. Ctr.*, 21 Misc. 3d 23, 33 (N.Y. App. Term 2008) (discussing pre-2005 New York state law precedents) (Davis, J., dissenting); *Jordan v. Bates Advert. Holdings, Inc.*, 816 N.Y.S.2d 310, 322–23 (Sup. Ct. 2006) (applying *Farias*); *Serdans v. New York & Presbyterian Hosp.*, 30 N.Y.S.3d 45, 46 (1st Dep't 2016) (applying *Jordan*).

20

**B.     Importance of the Issue**

The importance of this issue to the state, the second factor, also suggests that certification is warranted. We have said that sufficiently important state issues "require value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 74 (2d Cir. 2012) (internal quotation marks and alterations omitted). "[Q]uestions of this nature involving competing policy concerns are best resolved by the New York Court of Appeals." *Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, 702 F.3d 152, 159 (2d Cir. 2012). The standard by which claims for punitive damages under the NYCHRL are evaluated is plainly an issue involving competing policy concerns, the importance of which is far broader than our arriving at a proper resolution of the case at bar.

The New York City Council has twice amended its Human Rights Law in order to make clear that it is intended to have more bite than the corresponding state and federal anti-discrimination statutes. In the 2005 Restoration Act, the Council noted that its human rights law "ha[d] been construed too narrowly to ensure protection of the civil rights of all persons covered by the law."

21

Restoration Act § 1. Reinforcing the issue's importance, the Council amended the law *again* in 2016 in order to ensure it was being fully enforced by courts. According to *amicus curiae* National Employment Lawyers Association/New York (NELA/NY), this case "raise[s an] important question[] of anti-discrimination law," Brief of Amicus Curiae in Support of Plaintiff-Appellant Requesting a Trial on Punitive Damages at 2, for "the punitive damages provisions of the City Law . . . are an integral part of the statutory scheme designed by the City Council to protect City residents and employees . . . from discrimination," *id.* at 3.

Further illustrating our belief that proper resolution of this issue is broader than the resolution of the case at bar, we note that federal courts have provided conflicting decisions concerning the availability of punitive damages under the NYCHRL. *Compare Roberts v. United Parcel Serv., Inc.*, 115 F. Supp. 3d 344, 373 (E.D.N.Y. 2015) (applying federal standard for punitive damages under NYCHRL), *Johnson v. Strive E. Harlem Emp't Grp.*, 990 F. Supp. 2d 435, 449–50 (S.D.N.Y. 2014) (same), *MacMillan v. Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 563 (S.D.N.Y. 2012) (same), *and Caravantes v. 53rd St. Partners, LLC*, No. 09

22

Civ. 7821 (RPP), 2012 WL 3631276, at *25 (S.D.N.Y. Aug. 23, 2012) (same), *with*

*Katz v. Adecco USA, Inc.*, 845 F. Supp. 2d 539, 552–53 (S.D.N.Y. 2012) (recognizing

the Restoration Act's instruction to construe the NYCHRL liberally and refusing

to apply the federal standard for punitive damages under the NYCHRL).

Finally, and underscoring the importance of the policy issue here,

resolving the standard under the NYCHRL is important because punitive

damages are not available under the state's human rights law. *See Thoreson v.*

*Penthouse Int'l, Ltd.*, 606 N.E.2d 1369, 1370–73 (N.Y. 1992). As a result, employees

seeking to vindicate fully their state and local rights to non-discrimination can

only obtain this form of relief under the NYCHRL, making the establishment of a

clear standard for awarding punitive damages even more important.

C.     **Capacity for Certification to Resolve Litigation**

The final factor is whether an answer from the New York Court of Appeals

to a certified question would resolve the present litigation, and this factor also

points in favor of certification. The sole issue on appeal is whether the district

court incorrectly declined to charge the jury with a punitive damages instruction.

Clarity as to the appropriate standard for awarding punitive damages under the

23

NYCHRL will permit this Court to determine whether the district court erred in deciding that the federal and NYCHRL standards were similar such that no charge was warranted under the NYCHRL.

* * *

Because all three considerations favor certification, we conclude that it is appropriate to certify the following question to the New York Court of Appeals:

(1)     What is the standard for finding a defendant liable for punitive damages under the New York City Human Rights Law, N.Y.C. Admin. Code § 8-502?

The Court of Appeals may expand the certified question to address any other issues that may pertain to the circumstances presented in this appeal. "We have greatly benefited on many occasions from the guidance of the New York Court of Appeals, and would very much appreciate its view on this matter of state law." *O'Mara*, 485 F.3d at 699 (citations omitted).

## CONCLUSION

It is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate, together with a

24

complete set of the briefs and the record filed in this Court, pursuant to Second Circuit Local Rule 27.2 and New York Codes, Rules, and Regulations Title 22, § 500.27(a), as ordered by the United States Court of Appeals for the Second Circuit. The parties will equally bear any fees and costs that may be imposed by the New York Court of Appeals in connection with this certification. The panel retains jurisdiction and will consider any issues that remain on appeal once the New York State Court of Appeals has either provided us with its guidance or declined certification.